UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 4:19-CR-0207-3 |
|---|---|---|
| | ) | |
| | ) | (BRANN, D.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| TERRY HARRIS, | ) | |
| Defendant | ) | |

<u>MEMORANDUM FOR COVID-19 BAIL DECISION</u>
(Doc. 79)

## I.     Introduction

Before the Court is Mr. Harris's Motion for Release on Bail (Doc. 79). Along with the Motion, a Brief was filed (Doc. 80), the required notice (Doc. 83) requesting a hearing, and the Government's Brief in Opposition (Doc. 84). The matter is ripe for decision. For the reasons detailed in this Memorandum the request for a hearing and request for detention will be denied.

## II.    Court procedure for Covid-19 cases

Anticipating a significant number of requests for reconsideration of bail in light of the Covid-19 pandemic, our court instituted an expedited procedure to hear these cases in an orderly and deliberate fashion. The filing of a bail motion citing Covid-19 as a reason for release from detention will be specially designated and a docket entry will automatically notify counsel about the expedited procedures. That entry was made in this case on April 1, 2020.

### III. Standard of Review

This Court has continuing jurisdiction to review its own bail decisions. In this case the Request for Reconsideration is made under 28 U.S.C. §3141 which is the general release and detention authority of the Court, and 28 U.S.C. §3142(i) which states:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142.

The question presented by this motion requires an analysis of the Bail Reform Act under pandemic conditions. Does this petition present a "compelling reason" to alter a previous bail decision?

### IV. Review of previous bail decision

The Original Order of Detention was filed on June 21, 2019 (Doc. 11) at Docket 4:19-MJ-098. Mr. Harris did not contest detention at that time. His counsel reserved the right to seek bail at a later time.

### V. Discussion of the Covid-19 Pandemic

We are mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents.[1] We are also cognizant that the

---

[1] World Health Organization, "WHO characterized COVID-19 as a pandemic" March 25, 2020, available at https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen

President of the United States has declared a national emergency and that the Governor of the Commonwealth of Pennsylvania[2] has also declared a state of emergency to address the needs of the nation and the Commonwealth respectively. We also recognize that public health officials have strenuously encouraged the public to practice "social distancing," to hand-wash and/or sanitize frequently, and to avoid close contact with others—all of which presents challenges in detention facilities. *See United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857 *2 (D. Md. Mar. 17, 2020). As of April 4, 2020, 24 cases have been issued around the country citing *Martin*. Of the 24 cases that cite *United States v. Martin,* only three cases released the detainee, 20 cases detained the defendant, and one case granted bail review. In *United States v. Davis*, the judge denied the government motion for pretrial detention because the detention facility already had cases of COVID-19 and

---

[2] Governor Thomas Wolf proclaimed the existence of a disaster emergency throughout the Commonwealth pursuant to 35 Pa.C.S. §7301(c) on March 6, 2020. He ordered all non-essential business in the Commonwealth to close on March 20, 2020, and he extended the closure of non-essential businesses and schools "indefinitely" to slow the progression of the pandemic. "Gov. Wolf and Sec. of Health Expand 'Stay at Home' Order to Carbon, Cumberland, Dauphin and Schuylkill Counties, Extend School Closures Indefinitely," March 30, 2020, available at https://www.governor.pa.gov/newsroom/gov-wolf-and-sec-of-health-expand-stay-at-home-order-to-carbon-cumberland-dauphin-and-schuylkill-counties-extend-school-closures-indefinitely/. That Stay at Home Order was extended to all 67 counties on April 2, 2020 to be effective thru April 30, 2020.

https://www.pa.gov/guides/responding-to-covid-19/#StayatHomeOrder (last accessed April 4, 2020).

the individual was not a flight risk and posed no serious threat to the community. *United States v. Davis*, No. ELH-20-09, 2020 WL 1529158 (D.Md. Mar. 30, 2020). The case also relied heavily on expert opinion that pretrial facilities are poorly equipped to manage the highly contagious and potentially deadly coronavirus. *Id.* Two out of the three cases were people detained due to immigration proceedings. See *Basank v. Decker*, No. 20-cv-2518 AT, 2020 WL 1481503, (S.D.N.Y. Mar. 26, 2020) and *Coronel, et al. v. Decker, et al.*, No. 20-cv-2472 AJN, 2020 WL 1487274 (S.D. N.Y. Mar. 27, 2020). Additionally, there was one case that only granted review of bail hearings to be assessed on a case to case basis. See *Karr v. State*, No. 4FA-19-00872CR, 2020 WL 1456469 (Alaska Ct. App. Mar. 24, 2020).

In a precedential opinion analyzing a Covid-19 release request in the context of the compassionate release provisions of the First Step Act the Court concluded that Covid-19 risk alone does not require release where the prison system has a plan in place to deal with the pandemic.

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. *See generally* Federal Bureau of Prisons, *COVID-19 Action Plan* (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid-19.jsp. Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion

> requirement takes on added—and critical—importance. And given the Attorney General's directive that BOP "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic," we anticipate that the exhaustion requirement will be speedily dispatched in cases like this one. Memorandum from Attorney Gen. to Dir., Bureau of Prisons 1 (Mar. 26, 2020), https://www.justice.gov/file/1262731/download. So we will deny Raia's motion.

*U.S. v. Raia,* 20-1033, slip op. at 8 (3rd Cir. April 2, 2020)

On March 31, 2020, Judge Jones of this court ordered the immediate release of fourteen men and women held in ICE civil detention in Pike, Clinton and York County facilities. According to Judge Jones, "Each of the petitioners suffers from chronic medical conditions and faces an imminent risk of death or serious injury if exposed to Covid-19." *Thakker v. Doll*, 1:20-cv-0480, slip op. at 2 (M.D. Pa. March 31, 2020. Ruling on their habeas "conditions of confinement" petitions[3] he found that "…a remedy for unsafe conditions need not await a tragic event." *Thakker v. Doll*, 1:20-cv-0480, slip op. at 6 (M.D. Pa. March 31, 2020). His review of the safety procedures at these three immigration facilities found they were insufficient to overcome the speculative risk of infection and death for an "imminent irreparable harm" finding in the TRO context.

---

[3] Petitioners invoked the jurisdiction of the Court under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (original jurisdiction), 28 U.S.C. § 2241 (habeas jurisdiction), and Article I, Section 9, clause 2 of the United States Constitution (the Suspension Clause) (Doc. 1, p. 6).

> The Petitioners' claim is rooted in imminent, irreparable harm. Petitioners face the inexorable progression of a global pandemic creeping across our nation—a pandemic to which they are particularly vulnerable due to age and underlying medical conditions. At this point, it is not a matter of *if* COVID-19 will enter Pennsylvania prisons, but *when* it is finally detected therein. It is not unlikely that COVID-19 is already present in some county prisons—we have before us declarations that portions of the Facilities have been put under ineffective quarantines due to the presence of symptoms similar to COVID-19 among the inmate population. Indeed, we also have reports that a correctional officer at Pike has already tested positive for COVID-19. (footnotes omitted).
>
> …
>
> Based upon the nature of the virus, the allegations of current conditions in the prisons, and Petitioners' specific medical concerns, detailed below, we therefore find that Petitioners face a very real risk of serious, lasting illness or death. There can be no injury more irreparable.

*Thakker v. Doll*, 1:20-cv-0480, slip op. at 8,9 (M.D. Pa. March 31, 2020).

Judge Jones cites several immigration detention cases where release has been ordered. *Thakker v. Doll*, 1:20-cv-0480, slip op. at 18-20 (M.D. Pa. March 31, 2020. He balanced the public interest in continued detention this way: "Finally, the public interest favors Petitioners' release. As mentioned, Petitioners are being detained for civil violations of this country's immigration laws." *Thakker v. Doll*, 1:20-cv-0480, slip op. at 23 (M.D. Pa. March 31, 2020.

In concluding that immediate release was required in these fourteen cases Judge Jones said:

> In times such as these, we must acknowledge that the *status quo* of a mere few weeks ago no longer applies. Our world has been altered with lightning speed, and the results are both unprecedented and ghastly. We now face a global pandemic in which the actions of each

> individual can have a drastic impact on an entire community. The choices we now make must reflect this new reality.
>
> Respondents' Facilities are plainly not equipped to protect Petitioners from a potentially fatal exposure to COVID-19. While this deficiency is neither intentional nor malicious, should we fail to afford relief to Petitioners we will be a party to an unconscionable and possibly barbaric result. Our Constitution and laws apply equally to the most vulnerable among us, particularly when matters of public health are at issue. This is true even for those who have lost a measure of their freedom. If we are to remain the civilized society we hold ourselves out to be, it would be heartless and inhumane not to recognize Petitioners' plight.

*Thakker v. Doll*, 1:20-cv-0480, slip op. at 24 (M.D. Pa. March 31, 2020).

The language of this case is strong and persuasive in the civil detention context. However, to apply this reasoning to prisons and jails across the board in all criminal cases is a much different matter. Different interests must be balanced when a criminal defendant has been detained only after a finding that no condition or combination of conditions will assure the presence of the defendant and the safety of the community. The balancing is likewise different when a criminal defendant is serving a sentence. The question of civil detention, early parole or compassionate release is not before me. This is a decision about bail during a pandemic.

I agree with the Courts that have held that a defendant is not entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation. *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895 *3 (D. Kan., Mar. 25, 2020). While the court remains sympathetic to the generalized risk regarding the possible complications caused by the COVID-19 virus "[s]uch

speculation does not constitute a 'compelling reason' for temporary release." *United States v. Loveings*, Cr. No. 20-51, 2020 WL 1501859 *3 (W.D. Pa. Mar. 30, 2020).

I believe I must make an individualized determination as to whether COVID-19 concerns are compelling in a particular case to justify temporary release under § 3142(i).

## VI. Flight Risk and Danger to the Community

The Government persuasively argues that Mr. Harris is a flight risk and a danger to the community. Regarding flight risk the government notes the potential for a life sentence (Doc. 84, pp. 20-12) and his use of aliases in the past:

> Harris's risk of flight is also underscored by the numerous aliases that he has used in the past. According to the Pre-trial Services Report, Terry Harris has been prosecuted under the name Alonzo Stubbs, Gunnard Armstrong, and Jamil Mintz. The use of such aliases may indicate a desire to conceal one's true identity from law enforcement and is therefore properly considered as a factor showing risk of flight. Courts have considered the use of aliases in their assessment of flight risk. United States v. Acosta, 769 F. Supp. 184 (E.D.Pa. 1991); United States v. Powell, 813 F. Supp. 903 (D.C. Mass. 1992); United States v. Jones, 143 F.Supp.3rd 78 (W.D.N.Y 2015), aff'd (2nd Cir. 15-3723, 2/11/2016).

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented by way of proffer in the Briefs (Docs. 80 & 84) I have determined that Mr. Harris should be detained pending trial. This is a presumption of detention case. The government has shown by clear and convincing evidence that

no condition or combination of conditions of release will reasonably assure the safety of any other person in the community. I also find that Mr. Harris did not proffer the quantum of evidence necessary to overcome the presumption, even if the information proffered by way of proposed hearing was all favorable (Doc. 79, ¶ 7-10; Doc. 83, ¶ 3). In addition, the reasons for detention included the following: the weight of evidence against the defendant is strong; he is subject to a lengthy period of incarceration if convicted; his lack of confirmable reported employment and income; and his lack of significant community or family ties to this district.

Regarding the danger to the community factor Mr. Harris also requires detention. It is alleged that he is, and has been since his release from prison, a leader in a conspiracy to distribute hundreds of kilograms of fentanyl and carfentanil in Pennsylvania. (Doc. 84, p. 19).

The rebuttable presumption in 18 U.S.C. § 3142(e)(3) reflects a Congressional finding that drug trafficking is a danger to the community and drug traffickers pose special flight risks. That finding has been born out in the current statistics. In the last several years, there have been thousands of drug overdose deaths in Pennsylvania: 4,516 deaths in 2016; 5,398 deaths in 2017; 4,422 deaths in 2018; and 3,811 deaths in 2019.[4] In 2018, Pennsylvania had the fourth highest rate of death

---

[4] Estimated Accidental and Undetermined Drug Overdose Deaths 2012 – Current, opendataPA, available at https://data.pa.gov/Opioid-Related/Estimated-Accidental-and-Undetermined-Drug-Overdos/m3mg-va8e.

due to drug overdose (36.1 per 100,000).[5] According to a DEA report, in 2018, twelve (12) people in Pennsylvania died each day due to drug-related overdose.[6] Pennsylvania has not been alone in the opioid crisis, as the death toll across the United States has been alarming. According to the CDC's national data, in the United States, there were 67,367 drug overdose deaths in 2018 and 70,699 deaths in 2017. The recent increase in drug overdose deaths has largely been attributed to opioid use – 47,600 of the 2017 overdose deaths involved opioids.[7] In Pennsylvania, the presence of an opioid was reported in 84% of overdose deaths in 2017 and 82% of overdose deaths in 2018.[8] By comparison, as of noon today (April 8, 2020) there have been three-hundred-ten (310) Covid-19 deaths in Pennsylvania in all of 2020.

I now turn to those factors, specific to Mr. Harris, that might outweigh the presumption of detention based solely on the current pandemic.

## VII. Covid-19 Bail Factors beyond standard considerations

### A. Specific health concerns of this defendant

Mr. Harris does not allege any unique health concerns.

---

[5] Drug Overdose Deaths, https://www.cdc.gov/drugoverdose/data/statedeaths.html .
[6] DEA Report available at: https://www.dea.gov/sites/default/files/2019-10/PRB%20FINAL%20--%20BUL-132-19%20Drug-Related%20Overdose%20Deaths%20in%20Pennsylvania%2C%202018.pdf .
[7] From the National Institute on Drug Abuse (cited by the CDC) https://www.drugabuse.gov/opioid-summaries-by-state/pennsylvania-opioid-summary .
[8] See DEA Report (supra, note 6)

### B. Specific conditions in the place of detention

"The Court is mindful that it bears a fiduciary responsibility to that those that are detained in jails and prisons. The incarcerated look to the Courts for protection of their health, welfare and personal rights in general. However, the Courts are not on the front line. That space is rightly occupied by corrections officials and their administration."[9] The Chief Judge of this Court issued Standing Order 20-5 on March 25, 2020, requiring all detention facilities where persons are being held by order of this court to notify the Chief Judge and the judicial officer who signed the detention order if a federal detainee is in medical isolation or quarantine for any reason.[10] As of the filing of this Opinion, no notice has been received from the Columbia County Prison that Mr. Harris is in medical isolation or quarantine for any reason.

---

[9] *United States v. Williams*, No. PWG-13-544, 2020 WL 1434130 (slip copy) (D. Md. Mar. 24, 2020).

[10] "…Further, each detention center shall promptly notify the Marshal for this District of any federal detainee who is in medical isolation or quarantine at their facility for any reason, promptly upon the entry of such detainee into such status. The Marshal shall then so notify the undersigned and the judicial officer who entered the Order of commitment of such status.

The Clerk's Office is DIRECTED to transmit a copy of this Order to the U.S. Marshal, who shall advise each involved detention center of its content, and who shall provide a copy of same to each detention center and each relevant law enforcement agency."
Standing Order 20-5, https://www.pamd.uscourts.gov/news/standing-order-2020-005 (last accessed April 4, 2020).

The government has proffered specific evidence about the procedure being used in Columbia County to curtail the spread of Covid-10. (Doc. 84-1). These precautions seem to be in line with the CDC Guidelines for Detention Facilities.[11] The Pennsylvania Supreme Court issued an Order on April 3, 2020 directing each county president judge to work with the relevant stakeholders to fashion localized plans for dealing with Covid-19 in county jails.

> We DIRECT the President Judges of each judicial district to coordinate with relevant county stakeholders to ensure that the county correctional institutions in their districts address the threat of COVID-19, applying the recommendations of public health officials, including the CDC's Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (Mar. 23, 2020).2 If utilization of public health best practices is not feasible due to the population of the county correctional institutions, President Judges should consult with relevant county stakeholders to identify individuals and/or classes of incarcerated persons for potential release or transfer to reduce the current and future populations of the institutions during this health crisis with careful regard for the safety of victims and their communities in general, with awareness of the statutory rights of victims, and with due consideration given to public health concerns related to inmates who may have contracted COVID-19. Moreover, consistent with these above considerations, President Judges are to undertake efforts to limit the introduction of new inmates into the county prison system.[12]

---

[11] https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html.

[12] *In Re: The Petition Of The Pennsylvania Prison Society*, No. 70-MM-2020, slip op. at pp. 2-3 (Pa. April 3, 2020) (per curiam).

There is nothing before this court to indicate that any specific problem has developed at the Columbia County Prison.

C. **Number of confirmed cases**

Based on the evidence before me at this time, there are no confirmed cases of Covid-19 in the Columbia County Prison. In all of Columbia County, where the prison is located, there are fifty-four confirmed cases and one death as of noon today (April 8, 2020). While these numbers are not guaranteed into the future, they do not suggest an immediate and unavoidable risk. I note that Mr. Harris seeks release to Montgomery County where, as of 3:15 p.m. yesterday (April 7, 2020) there are one-thousand-five-hundred-twenty-one (1521) confirmed cases and thirty-seven (37) deaths. He also indicates he owns property in Darby, Delaware County where there are one-thousand-thirty-four (1,034) confirmed cases and twenty-three (23) deaths. He states that he was self-employed and employed people in the wig making business in the Philadelphia area. In Philadelphia there are four-thousand-fifty-six (4,456) confirmed cases and eighty-seven (87) deaths.

Additionally, if there were a significant number of cases in the prison, releasing a prisoner without confirmation of their non-contagious status would place

the civilian population between the prison and their proposed residence at risk along with the persons in the proposed residence.[13]

## VIII. Release plan

Mr. Harris proposes to return to Philadelphia and live with "his girlfriend and mother of his child, Latoya Martin, at 751 Vandenburg Road, King of Prussia, Pennsylvania 19406." Given the age of the child and assuming they have been together for two years, there is nothing in this plan to indicate that Ms. Martin was, or would be able to supervise Mr. Harris in a meaningful way.

[The next page contains the conclusion]

---

[13] The PA Department of Health has issued the following guidelines if you have been exposed to Covid-19, entitled Self monitor and social distancing:
- Take your temperature with a thermometer two times a day and monitor for fever. Also watch for cough or trouble breathing.
- Stay home and avoid contact with others. Do not go to work or school for this 14-day period.
- Do not take public transportation, taxis, or ride-shares.
- Avoid crowded places (such as shopping centers and movie theaters) and limit your activities in public.
- Keep your distance from others (about 6 feet or 2 meters).
- If you need support services during this self-monitoring and social distancing period, call 1-877-PA-HEALTH (1-877-724-3258).

https://www.health.pa.gov/topics/disease/coronavirus/Pages/Travelers.aspx (last accessed April 4, 2020).

## IX. Conclusion

For all of reasons set forth above, Mr. Harris has failed to rebut the presumption of detention, and further he is not entitled to a reconsideration of our order of detention under 18 U.S.C. § 3142(i). Therefore, his motion for bail is DENIED.

An appropriate order follows.

Dated: April 8, 2020                        BY THE COURT

                                                     *s/William Arbuckle*
                                                     William Arbuckle
                                                     U.S. Magistrate Judge