IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 4:19-CR-00207-03 |
| v. | (Chief Judge Brann) |
| TERRY HARRIS, | |
| Defendant. | |

MEMORANDUM OPINION

FEBRUARY 28, 2023

Defendant Terry Harris asks the Court to review and revoke a detention order issued by Magistrate Judge William I. Arbuckle in October 2022. Harris, who has been charged with conspiring to manufacture and distribute fentanyl and fentanyl analogues, has been in jail awaiting trial for more than 45 months—an uncommonly long duration for pretrial detention. He believes this prolonged period in custody prior to trial violates his due process rights. But aside from the length of his detention, all factors relevant to the due process inquiry—namely, the seriousness of the offenses charged, the strength and complexity of the Government's case, and the risk of flight and danger to the community—weigh in favor of continued detention. Moreover, the recent delays in this case are attributable not to the Government, but to Harris and his co-defendants. Accordingly, Harris's motion is denied.

I. **BACKGROUND**

   A. **Factual Background**[1]

In 2016, the Federal Bureau of Investigation launched an investigation into suspected drug trafficking being conducted near Lewisburg, Pennsylvania. Specifically, the FBI learned that Defendant Anthony Bressi was manufacturing a substantial amount of fentanyl and fentanyl analogues, such as carfentanil, out of a commercial building along Route 15 in East Buffalo Township, Union County, and then distributing the illicit narcotics to his business partners, Harris and co-Defendant Damonico Henderson.

The FBI discovered that Bressi, Henderson, and Harris all served time in federal prison—specifically, the Federal Correctional Institute at Fort Dix ("FCI Fort Dix")—for drug-related offenses. At various times from 2008 to 2011, the three men were housed in the same unit at FCI Fort Dix; indeed, Bressi and Harris were housed together between July 2008 and September 2011.

Following their respective releases from federal custody, the three men launched an alleged coordinated drug conspiracy. Harris, who was released in

---

[1] The information detailed here comes from the factual record as outlined by the Government in its opposition to Harris's second motion for bail. See Doc. 229 (Gov't Opp.) at 3–8. In his Memorandum Opinion denying Harris's second bail motion, Magistrate Judge Arbuckle "adopt[ed] the facts proffered by the Government . . . in their entirety," explaining that "they are an accurate representation of the facts proffered at the earlier hearings in this case" and they "have not been contested by Mr. Harris." Doc. 240 (Arbuckle, M.J., Mem. Op. Denying Harris's Second Bail Motion) at 2. Because these facts comport with the evidence presented to this Court during the two-day evidentiary hearing held in November 2022, see Doc. 258 (Nov. 15, 2022, Hearing Tr.); Doc. 259 (Nov. 16, 2022, Hearing Tr.), for purposes of this motion, the Court likewise adopts the Government's proffer in full.

2

November 2012, formed a corporation named "SHIVA" in the State of Delaware within weeks of leaving federal prison. Two years later, upon Bressi's release from federal prison, Bressi formed a company in the same name in the Commonwealth of Pennsylvania. Although Bressi disassociated himself with SHIVA (Delaware) after his probation officer uncovered the connection with Harris, he continued to operate SHIVA (Pennsylvania). The company seemingly thrived. Between 2014 and 2019, SHIVA (Pennsylvania) appeared to be well capitalized, as the company's bank accounts were funded with hundreds of thousands of dollars in deposits.

      That said, alarm bells were going off within the FBI. Although SHIVA (Pennsylvania) claimed to be "engineering the future," there was little evidence of scientific activity at the company. Moreover, the deposits in the company's and Bressi's bank accounts were largely made in cash. And records from chemical supply houses showed that SHIVA (Pennsylvania) was purchasing substantial quantities of chemicals that were precursors to fentanyl and fentanyl analogues.

      The following summer, the FBI executed a search warrant on Bressi and the SHIVA (Pennsylvania) property. The FBI initiated the search while Bressi was on site, in the process of making a batch of carfentanil. Bressi then gave a lengthy videotaped statement to FBI agents in which he detailed his drug manufacturing activities and explained that the batch of carfentanil currently in production was destined for delivery to Harris and Henderson.

Armed with this information as well as Bressi's continued cooperation, the FBI arranged to proceed with the deliveries to Harris and Henderson—albeit under its supervision and with a different, licit substance substituted for the carfentanil. On June 19, 2019, Harris drove from Philadelphia to Bressi's home in Danville, Pennsylvania. Harris brought $30,000 in cash for Bressi and, in exchange, accepted more than 100 kilograms of the substance he believed contained carfentanil. The FBI recorded the transaction: video footage shows Harris placing the buckets of the substituted substance in the bed of his pick-up truck, and the audio recording contains drug-related discussions between Bressi and Harris that indicate Harris was aware of the product he was receiving.

Further, the FBI's review of Harris's personal finances between 2013 and 2019 revealed notable discrepancies between his stated income and the assets he accumulated. After his release from federal prison, Harris formed a company named Pretty Weave Thieves, which purportedly sold retail hair products. But from 2013 to 2018, Harris reported no personal income or business income associated with Pretty Weave Thieves. That said, from December 2016 to June 2018, there was nearly $440,000 in cash deposits into bank accounts Harris controlled. Ten of these deposits (totaling $69,000) were under the $10,000 reporting threshold mandated by the Bank Secrecy Act of 1970.

### B. Procedural History

Harris was arrested on a criminal complaint on June 17, 2019,[2] and a week later, a federal grand jury in the Middle District of Pennsylvania returned a four-count indictment against him and his co-defendants, Bressi and Henderson.[3] Harris was charged on two counts: (1) conspiracy to manufacture, distribute, and possess with intent to distribute controlled substances; and (2) attempted possession with intent to distribute controlled substances.[4] He pleaded not guilty,[5] and Magistrate Judge Arbuckle ordered him detained pending trial.[6]

To date, Harris has filed two separate motions for bail.[7] On April 8, 2020, Magistrate Judge Arbuckle denied the first motion, which Harris based principally on circumstances related to the COVID-19 pandemic.[8] Following this ruling, Harris and his co-defendants sought and received eight separate continuances.[9] The Defendants also filed eleven different pretrial motions,[10] for which this Court

---

[2]  *See* Dkt. No. 19-MJ-00048, Doc. 1 (Complaint – SEALED).
[3]  Doc. 16 (Indictment).
[4]  *Id*. (Counts I & IV).
[5]  Doc. 22 (Harris Not Guilty Plea).
[6]  Doc. 11 (Initial Order of Detention).
[7]  Doc. 79 (Harris First Mot. to Revoke Detention Order); Doc. 226 (Harris Second Mot. to Revoke Detention Order).
[8]  *See* Doc. 86 (Arbuckle, M.J., Mem. Op. Denying Harris's First Bail Motion).
[9]  *See* Doc. 91 (May 12, 2020, Order to Continue); Doc. 98 (Sept. 2, 2020, Order to Continue); Doc. 115 (Oct. 28, 2020, Order to Continue); Doc. 123 (Dec. 10, 2020, Order to Continue); Doc. 133 (Feb. 8, 2021, Order to Continue); Doc. 146 (June 9, 2021, Order to Continue); Doc. 157 (Dec. 1, 2021, Order to Continue); Doc. 222 (Aug. 10, 2022, Order to Continue).
[10] Doc. 150 (Bressi Mot. to Preclude Statements); Doc. 158 (Harris Mot. to Sever); Doc. 160 (Harris Mot. to Preclude Co-Conspirator Statements); Doc. 162 (Harris Mot. to Preclude Tape Recordings and Transcripts); Doc. 166 (Henderson Mot. to Suppress Prison Calls); Doc. 168 (Henderson Mot. to Suppress Physical Evid.); Doc. 170 (Henderson Mot. to Compel);

(acting on the Defendants' request) scheduled for a two-day evidentiary hearing on November 15 and 16, 2022.[11]

Prior to the hearing, Harris filed his second motion for bail.[12] Magistrate Judge Arbuckle denied that motion on October 28, 2022.[13]

Before the Court now is Harris's appeal of Magistrate Judge Arbuckle's October 2022 ruling.[14] That motion has been fully briefed,[15] and the evidentiary hearing on the Defendants' pretrial motions has been completed.[16] Accordingly, Harris's motion appealing Magistrate Judge Arbuckle's denial of his second bail motion is now ripe for disposition.

## II.    LEGAL STANDARD

Following indictment, a court (typically by way of a magistrate judge) determines the defendant's eligibility for pretrial release by following the procedures outlined in the Bail Reform Act.[17] If a defendant is ordered detained, he may later move for revocation and amendment of that order.[18] District courts review magistrate judges' detention orders *de novo*.[19] Accordingly, although a

---

Doc. 172 (Henderson Mot. to Sever); Doc. 186 (Bressi Mot. to Preclude Traffic Stop Evid.); Doc. 188 (Bressi Mot. to Suppress Trash Pull Evid.); Doc. 190 (Bressi Omnibus Mot.).
[11] Doc. 235 (Scheduling Order – Nov. 15, 2022, Suppression Hearing).
[12] Doc. 226 (Harris Second Motion for Bail).
[13] Doc. 240 (Arbuckle, M.J., Mem. Op. Denying Harris's Second Bail Motion).
[14] *See* Doc. 262 (Mot. for Review and Reversal of Detention Order).
[15] Doc. 263 (Harris Br.). The Government did not file a brief in opposition, relying instead on its prior filings in this case.
[16] *See* Doc. 258 (Nov. 15, 2022, Hearing Tr.); Doc. 259 (Nov. 16, 2022, Hearing Tr.).
[17] 18 U.S.C. §§ 3402 *et seq*.
[18] 18 U.S.C. § 3145(b).
[19] *United States v. Delker*, 757 F.2d 1390, 1394–95 (3d Cir. 1985).

district court should give "respectful consideration" to the magistrate judge's findings,[20] it must ultimately decide the propriety of detention without deference to the magistrate judge's conclusion.[21]

## III.   ANALYSIS

Defendant Terry Harris has asked the Court to review and reverse the detention order Magistrate Judge Arbuckle issued in October 2022 when denying Harris's second motion for bail.[22] Specifically, Harris argues that continued detention violates his due process rights.[23] The Court disagrees.

In *United States v. Accetturo*, the Third Circuit outlined the process district courts should employ when considering a motion to revoke or amend a prior detention order.[24] Recognizing that "due process is a flexible concept," the Third Circuit declined to draw "arbitrary lines" for when defendants "adjudged to be flight risks or dangers to the community should be released pending trial," instructing that "due process judgments" should instead "be made on the facts of individual cases."[25] To that end, the Third Circuit directs district courts to reevaluate "the factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the Government's proof that defendant

---

[20]   *United States v. Traitz*, 807 F.2d 322, 325 (3d Cir. 1986).
[21]   *United States v. Fortna*, 769 F.2d 245, 249–50 (5th Cir. 1985).
[22]   Doc. 262 (Mot. for Review and Revocation of Detention Order).
[23]   *Id*.
[24]   783 F.2d 382, 388 (3d Cir. 1986).
[25]   *Id*.

poses a risk of flight or a danger to the community, and the strength of the Government's case on the merits."[26] That reevaluation should be supplemented by the consideration of "such additional factors as the length of the detention that has followed, the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity."[27]

Here, Harris predicates his request for release on a single additional *Accetturo* factor: the length of detention. Harris has been detained since June 21, 2019, which means that as of this writing, he has been in custody awaiting trial for more than 45 months.[28] This is, by any measure, a substantial period of detention prior to trial.[29] That said, the length of pretrial detention, while "a factor in determining whether due process has been violated," is not alone dispositive and "will rarely by itself offend due process."[30] This factors thus weighs heavily in favor of Harris's argument that his due process rights have been violated, but it does not supersede all other factors relevant to the detention determination.

Those remaining factors, considered independently, support continued detention. Preliminarily, Harris does not dispute that the factors relevant to the

---

[26] *Id.* (cleaned up).
[27] *Id.*
[28] *See* Doc. 11 (Order of Detention).
[29] *See United States v. Torres*, 995 F.3d 695, 709 (9th Cir. 2021) (finding that although the defendant's 21-month detention "does not yet violate due process," it is "significant under any metric," "deeply troubling," and "approaching the limits of what due process can tolerate").
[30] *United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000) (internal quotation marks and citation omitted).

8

initial detention militate against his release—and for good reason. In criminal cases like this one, where the charges include a narcotics crime punishable by more than ten years, there is a presumption of detention.[31] Moreover, the offenses at issue here are serious (Harris is facing a mandatory minimum sentence of fifteen years' imprisonment with a maximum allowable sentence of life in prison) and the Government's case is strong (law enforcement supervised a controlled delivery in which Harris received 100 kilograms of a mixture or substance he believed contained carfentanil). And given the seriousness of the charges and strength of the Government's case, this Court concurs with Magistrate Judge Arbuckle's finding that Harris remains both a flight risk and a danger to the community.[32]

As for the final two additional *Accetturo* factors—the complexity of the case and whether either party "needlessly" added to that complexity—neither weigh in favor of Harris's argument that his due process rights were violated. For the complexity factor, the Court agrees with the Government that because more complex cases necessarily require more extensive trial preparation, the more complex the case the less likely a prolonged period of pretrial detention is to offend due process.[33] Here, the Government has alleged a multi-defendant drug

---

[31] 18 U.S.C. § 3142(e)(3)(A).
[32] *See* Doc. 240 (Arbuckle, M.J., Mem. Op. Denying Harris's Second Bail Motion) at 3–4.
[33] *See* Doc. 229 (Gov't Opp.) at 18–19 (citing the "factual and legal complexities" of the case as a justification for the extended pretrial detention); *see also United States v. El-Gabrowny*, 35 F.3d 63, 65 (2d Cir. 1994) (explaining that the complexity of the case militates against a finding of a due process violation, as more complex cases "reasonably require a lengthy period for pretrial preparation"); *El-Hage*, 213 F.3d at 80 ("Everyone involved agrees that the underlying

trafficking conspiracy spanning several years and extending into multiple federal jurisdictions.[34] Given this complexity, it is only reasonable to expect a lengthy period of pretrial preparation as well as pretrial motions practice.

For the final factor, concerning the responsibility for any added complexity, the question is not simply whether either party contributed to the complexity of the case; rather, this factor concerns actions by either party that "needlessly" complicated the case.[35] As Magistrate Judge Arbuckle correctly concluded, neither party added "needlessly" to the case's complexity.[36] To the extent the case was initially delayed due to the Government's voluminous document production, such discovery reflects the complexity of the case and accords with the Government's obligations as propounded by the Supreme Court of the United States in *Brady v. Maryland*.[37] And the responsibility for all recent delays rests solely with the Defendants. Since April 2020, the Defendants have sought (and received) eight

---

    case is of exceptional complexity and that discovery and trial preparation are of necessity extremely time-consuming for both sides.").

[34] *See* Doc. 229 (Gov't Opp.) at 18–19 ("[T]he case involves the seizure of one of the largest domestic fentanyl laboratories in recent memory and the recovery of hazardous precursor materials. The capabilities of the lab and those associated with it to produce fentanyl analogues requires expert testimony and separates this from a less-complex drug case. This case also involves millions of dollars of money laundering of drug proceeds . . . [and] also includes the analysis of telephone toll records, surveillance, geolocation tracking of phones, and the controlled delivery of products by the Government to [D]efendants Henderson and Harris by Bressi.").

[35] *Accetturo*, 783 F.2d at 388.

[36] *See* Doc. 240 (Arbuckle, M.J., Mem. Op. Denying Harris's Second Bail Motion) at 4.

[37] 373 U.S. 83 (1963).

separate continuances.[38] Further, the Defendants have filed eleven different pretrial motions.[39] For those motions, the Defendants requested an evidentiary hearing, which this Court held on November 15 and 16, 2022.[40] And then, at the Defendants' request, this Court granted the Defendants leave to file supplemental briefs in support of their various pretrial motions.[41]

To be clear, the Court does not begrudge the Defendants' efforts to challenge the admissibility of certain evidence. Because they pleaded not guilty, they can and should mount a vigorous defense. But having done so, they cannot now cry foul for the delay caused by their pretrial litigation tactics. The delay is by no means needless. It is also by no means attributable to the Government.

## IV. CONCLUSION

Although Harris has been detained without trial for a substantial period, that delay does not, by itself, necessitate release. Instead, the Court must weigh this delay against all other factors relevant to the detention determination. The Court

---

[38] *See* Doc. 91 (May 12, 2020, Order to Continue); Doc. 98 (Sept. 2, 2020, Order to Continue); Doc. 115 (Oct. 28, 2020, Order to Continue); Doc. 123 (Dec. 10, 2020, Order to Continue); Doc. 133 (Feb. 8, 2021, Order to Continue); Doc. 146 (June 9, 2021, Order to Continue); Doc. 157 (Dec. 1, 2021, Order to Continue); Doc. 222 (Aug. 10, 2022, Order to Continue).

[39] Doc. 150 (Bressi Mot. to Preclude Statements); Doc. 158 (Harris Mot. to Sever); Doc. 160 (Harris Mot. to Preclude Co-Conspirator Statements); Doc. 162 (Harris Mot. to Preclude Tape Recordings and Transcripts); Doc. 166 (Henderson Mot. to Suppress Prison Calls); Doc. 168 (Henderson Mot. to Suppress Physical Evid.); Doc. 170 (Henderson Mot. to Compel); Doc. 172 (Henderson Mot. to Sever); Doc. 186 (Bressi Mot. to Preclude Traffic Stop Evid.); Doc. 188 (Bressi Mot. to Suppress Trash Pull Evid.); Doc. 190 (Bressi Omnibus Mot.).

[40] *See* Doc. 258 (Nov. 15, 2022, Hearing Tr.); Doc. 259 (Nov. 16, 2022, Hearing Tr.).

[41] Doc. 261 (Supplemental Briefing Order).

has done so and concludes that continued detention is warranted. Harris's motion appealing Magistrate Judge Arbuckle's denial of his second bail motion is denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge
